Your Honors, this case belongs in Peru. All the plaintiffs are Peruvian. They claim to have been injured in Peru from a smelting facility emitting emissions in Peru. A facility owned by a Peruvian company and regulated under a site-specific remedial plan promulgated by the Peruvian government and enforceable by Peruvian regulators under Peruvian law. Now, international comedy is a reciprocal principle. U.S. authorities would be outraged if a provincial court in Peru were to entertain a lawsuit by American nationals over emissions from a factory here in St. Louis. Is there any support in the record for your last statement, counsel? Given the lack of interest of the United States in this case and the medium interest of Peru? Your Honor, I would not say the government's failure to file a statement of interest indicates a lack of interest. Courts are legioned, cases are legioned, saying that the government routinely does not weigh in on private litigation without... That's the reason I interrupted you. Well, so we can look at what the government said it would do in other cases. For example, Mojica. Yeah, but you said Peru, counsel. Okay. But look, you can look at what the government did, for example, in Mojica, which I know did not involve Peru, but very, very similar facts. And it said foreign law and foreign courts should be governing torts in foreign countries and the U.S. courts should be hearing cases about torts in the United States. Affirming here is going to invite an end run around all of the Supreme Court's cases that are emphatically trying to close the doors of U.S. courthouses to foreign torts in foreign countries. Under the district court's approach, any foreigner can sue over foreign torts, can sue a U.S. company saying decisions were made here in the United States. We don't even have to use federal statutes. We don't have to use federal common law. We're just bringing this case under Peruvian law. Excuse me. We're just bringing this case under state law. Well, with a Peruvian defense, right? Yes, with a Peruvian defense that is going to be decided by a judge, including novel questions of Peruvian law, not by a judge, that is, by a jury sitting in Missouri, which is part of the affront to Peru. Now, the simplest route to reversal, Your Honors, is through the trade promotion agreement. That agreement represents the two nations' definitive statement of their own interests. So the court need not, and in fact really should not, engage in the abstract exercise of hypothesizing the sovereign's interests. The sovereigns identify their interests in this case. On this point, the district court just simply misread the TPA. It took an agreement that is emphatically about protecting each country's sovereignty and read it as affirmatively authorizing each country to adjudicate emissions in the other country, which means Peruvian courts can, in fact, are required to sit in judgment of emissions in St. Louis and vice versa. But the TPA says the opposite. As the US trade representative, who authored or partially offered the National Mining Association's amicus brief, explained, the TPA enshrines the United States and Peru's mutual understanding that cases that are about torts in a domestic location should be adjudged by the courts in that location, and enforcement should be occurring domestically, not in a foreign country. Article... I have some sentences and paragraphs behind you. Go ahead. I have some sentences and paragraphs behind you. What Supreme Court case... What's your best Supreme Court case? You're an experienced advocate. What's your best Supreme Court case that we should really worry about, focus on? There are two of them. One of them is the Belgenland, and the other is Canada Malting. Canada Malting is particularly appropriate because there was a dismissal of a case on international comedy grounds. These cases have generally been litigated in the courts of appeals, and Mujica is very relevant. Torres, my goodness. It's almost the same case. It's plaintiffs from the same country, Peru. It's about torts in Peru. Peru made the same protest there, and that case was dismissed. The only material difference is that since then, the TPA has been entered into, and since then, the Supreme Court has adjudicated all sorts of cases, closing courthouse doors to foreign torts. But I do think the TPA is critical here. It emphasizes sovereign interests at every turn. It opens by declaring, quote, that each party has sovereign rights and responsibilities over environmental regulation and enforcement. And just one more sentence, if I may. It guarantees Peru the, quote, right to establish its own levels of domestic environmental protection and environmental development priorities. And I think that's traditional regulatory kind of stuff. It's prefatory, really, to the issues that are before us here today. The real question I've got is what do you have to explain the lack of a Peruvian governmental interest in just pounding the table fiercely and saying Peruvian torts, Peruvian parties, Peruvian law applies. It ought to be litigated in Peru. And when we said what we get is sort of this ambivalent response out of the governmental authorities out of Peru. Some saying that they're OK with the case being litigated here. Some saying they're not. Nobody taking an official position on the part of the Peruvian government says, this case belongs in Peru because of the nature of its framing. Well, Your Honor, I vehemently disagree with two aspects of what you've described. First, the two letters that the district court focused on in its second opinion are from the national government of Peru. They are the only letters purporting to speak for the government of Peru. The district court in its earlier opinion had mentioned two letters from members of Congress to their own government. Those are not statements of national policy. And I would also emphasize those letters were not wishy-washy, the two letters from the equivalent of the prime minister of Peru through diplomatic channels and from the head of economy and finance. They declared that this is an attack on Peruvian sovereignty. That's at pages two to three. Specifically, quote, the right of the Republic of Peru to regulate and control activities conducted within its territory are for Peru. Also at two to three, the authorized spokesperson for the Peruvian government expressed deepest concerns about the suits. And then at page 198 of the app, of our appendix, the 2017 letter specifically addresses the TPA and says that this lawsuit is a violation of the TPA. It says that it's for Peru to interpret specific regulatory statements, policies, and decisions of Peru. While I'm, if the court has no questions on the, let me just finish with one more thought on the TPA and then I'll turn to a bit more about Peru's interests. The TPA says precisely how environmental claims are supposed to be adjudicated. Most notable is Article 18.4, which conveys the clear message that the United States is to enforce and provide remedies for domestic violations of its environmental laws. And Peru is to do the same for its environmental laws. It explicitly contemplates lawsuits exactly like this and says that they belong in the country where the tort occurs. It says that anyone harmed by a violation of a country's environmental laws will have a right, quote, to sue another person under that party's jurisdiction for damages under that party's laws. And 18.3 paragraph 5 punctuates the point. Nothing, I'm quoting here, nothing in this chapter shall be construed to empower a party's authorities to undertake environmental law enforcement activities in the territory of another party. This lawsuit is nothing short of an environmental law enforcement activity over a facility in another country. Let me say a few more words. If the court decides that it wants to conduct the comedy balancing, which it does not have to because the TPA already balances, but if this court were inclined to conduct it, this court should dismiss because Peru's interests vastly outweigh Missouri's interests. There is no dispute that Peru has a sovereign right to set emissions levels for factories within its own territory. Exercising that sovereign right, Peru struck an intricate balance between deeply competing interests. It weighed on the one hand the need to attract foreign investment and modernize the facility after decades of environmental neglect while keeping it open as an economic engine for the local economy on the one hand against the need on the other hand to diminish emissions and remediate after decades of neglect. That balance is reflected in the PAMA, which is an intricate remedial plan that says exactly what must be done pursuant to a specific timeline in a specific order. This lawsuit is a frontal attack on the PAMA, on Peru's environmental policy. Council, you're into your rebuttal, but more importantly, and I'll be very quick, these are kind of yes, there's still no parallel proceeding in Peru, right? Not a lawsuit and not a governmental action in any way on any of this, right? That is correct, Your Honor. I do not want to eat into my rebuttal time. So you need to stop. But I will, just by way of answer, that is correct. There were no parallel proceedings in many other cases, and international comedy is not limited to cases where there are parallel proceedings. Thank you. Canada malting is an example. Yes. Excuse me. The Belgenland is an example. Thank you, Your Honor. Thank you. Mr. Branson. Thank you, Your Honor. May it please the court. I didn't hear Mr. Rosenkranz say the words abuse of discretion. I want to start with the standard of review here, because the simplest way to resolve the case is to affirm that Judge Perry's careful opinion reflects no abuse of her broad discretion. In all four- If the district court misinterpreted the TPA, would that be an abuse of discretion? I think it would be, Your Honor. I think that she's not. Because I did hear him say that. That's true. They do make their legal error argument on the TPA. However, to situate the argument here, I want to stress that in all four appellate cases to dismiss on the basis of foreign policy abstention, at least one of the affected sovereigns has filed a brief with the court expressly asking for dismissal. That did not happen here, Judge Erickson. I thought you got right to the heart of the matter with your question. Peru has not filed a brief here. They have submitted, I think, what Judge Perry reasonably construed as ambiguous letters that stand in stark contrast to what they filed in Torres, a case that Mr. Rosencrantz says is exactly like this one. If you compare the amicus brief that Peru filed in Torres, they used phrases like, we protest this insult to our sovereignty. The 2017 letter, Judge Perry properly and reasonably read it as stopping short of that. And I think the important point there is that Peru has not objected to Judge Perry's reading of that letter. If this case were truly such an affront to Peruvian sovereignty that it risks the sort of foreign policy calamity that this doctrine demands, Peru would have said something to this court. It has not. It has not done so. Now, Judge Kobes, to address the TPA, I think you're right. That's why Mr. Rosencrantz has to make that argument, because that is the only way to show a legal error here. The TPA's text says nothing about private tortsuits or dictating the forum for such tortsuits. And in that way, it stands in stark contrast to the agreements that Mr. Rosencrantz has in his other cases. Ungaro-Benegis is one of their lead cases. The agreement there, on its face, in the text of the agreement, said that the party's purpose was to establish a quote, unquote, exclusive forum for the resolution of civil claims arising from Nazi-era Germany. And it required the United States to file a statement of interest saying that dismissal of civil claims would be in the foreign policy interests of the United States. There's nothing like that in the TPA. The TPA, if anything, says the opposite. The implementing statute makes clear that Congress did not intend the TPA to be used as any sort of defense in private litigation. And I think, Judge Kobes, one of the easiest ways to slice through the TPA question is you look at section 102c1 of the implementing statute, which says private parties may not use the TPA as a defense. Mr. Rosencrantz's reply brief, the only answer to that is that international comedy abstention is not a defense because it goes to the forum rather than the merits of the claim. Of course, that's also true of personal jurisdiction. And we would all consider that a defense. That's denominated as a defense in Rule 12. But more importantly, the defendants themselves have pleaded this argument as a quote, unquote, defense in their answer. And this is at docket 971. They have called international comedy a defense. They use that word. And so under their own nomenclature, which I think is correct, this argument is simply barred by the implementing statute. And you don't need to get into parsing the text of the TPA. However, if you do parse the text of the TPA, we've explained in our brief, and I'm happy to walk through any of the specific clauses if your honor have questions about them. But I think the point is none of them say with any sort of specificity whatsoever that the party's intent was to regulate the forum for private tort suits. And in many respects, they say the opposite. Judge Erickson, I thought you correctly labeled Mr. Rosenkranz's lead clause as a standard preamble clause. And this court typically does not find certainly conflict preemption on the basis of such preambles. And with an extraordinary doctrine like international comedy abstention, you certainly cannot find the sort of foreign policy calamity that they need to win on the basis of a vague commitment to Peruvian sovereignty. And when you read the structure of chapter 18, it's clear that the point of chapter 18 was to raise environmental standards. It was not to provide a freestanding bar to common law tort suits. And so I think looking at the text, and again, international comedy abstention is not licensed to throw out ordinary principles of statutory construction. We look at the words on the page, and none of them come close to dictating the forum for this lawsuit. Counsel, I'll ask you later, second question, how relevant it is, but just the fact, in any of our previous appeals, have we addressed this very odd circumstance of Missouri brooding omnipresence in the law, controlling most of it, but a Peruvian defense? I'm the subject of any of the previous defenses, appeals. Fire. So in this court, I'm not aware of a case involving that situation, Your Honor. I think that's right. It is somewhat unusual. I acknowledge that. However, Judge Benton, I thought you were right to focus on the defense, the article 1971 defense, because I think that resolves Mr. Rosencrantz's main argument about the affront to Peruvian sovereignty. OK, now, I haven't got to the relevant point yet. I'm going to ask another relatively irrelevant point. Wouldn't most Missouri courts say Peruvian law implies entirely to this? Entirely, entirely, entirely. I don't think so, Your Honor. I think, most importantly, in this posture, Judge Perry conducted a choice of law analysis. The defendants have not appealed. Did she do it under Missouri Law Council? Did she do it under Missouri Law? She did, under Missouri Choice of Law rules, that's correct. And that's not been appealed. Which is a restatement, kind of. Go ahead. That's right, basically the restatement. And for her, I think the most important point is that Peruvian and Missouri law don't conflict on the common law of negligence, for the most part. So under Missouri Choice of Law rules, she properly determined that Missouri law applies to most of the case. But Peru doesn't have juries, right? I don't think so. I think that's right. I think that's right, too. But that's not, I don't think that's an argument for why there would be a court. How relevant is that in all this way, this odd amalgam of law, and procedure, and juries, and no juries? I don't think it's super relevant, Judge Benton, because the question here, this is not a form non-convenience doctrine. And I want to stress that they've forfeited that. And so for all of Mr. Rosencrantz's parade of horribles about how this doctrine is vital to keep a flood of litigation out of US courts, it's really not. It's been applied four times by appellate courts ever. And four in the federal system, counsel. That's right, in federal appellate courts. There's a big state system out there. Go ahead. Well, I meant this international comedy abstention doctrine, Judge Benton. I don't think this doctrine has ever been applied in state court, as far as I know. And in fact, Torres was, the principal fight there was about removing it from state court to federal court. But as to your question about the presence of juries, Judge Benton, the comedy question is about does this lawsuit offend a foreign policy interest so calamitous that it justifies the rare surrender of jurisdiction. And I think the mechanics of how a case would work in Peru there, it is relevant to that. But as Judge Perry found, I think the more salient point is that we've been litigating this case for 16 years now. And to dismiss it at this point and tell us to all go to Peru, where Mr. Rosenkranz's clients are all American clients, and they're saying they want to be sent to Peru to defend this case thousands of miles from home, Judge Perry reasonably determined that that would be unfair. It would frustrate interests of judicial economy. And that's another factor weighing in favor of her exercising jurisdiction. Now, to address the Torres case, because Mr. Rosenkranz emphasized it quite a lot, the most important thing about Torres is that the district court there exercised its discretion to abstain. And so the Fifth Circuit opinion that they are relying on is literally all of one sentence saying, we discern no abuse of discretion in the court's international comedy ruling. That, in this posture, when we're on abuse of discretion review, does not justify in any way holding that Judge Perry so abused her discretion as to require reversal. But the other difference, and Judge Erickson, this goes back to your point, is Peru reacted differently to both lawsuits. And as I've already described, they vehemently, they filed a brief in the district court in Torres, and they filed a brief in the Fifth Circuit. And that brief, the tone of it, and the level of clarity, and the strenuousness of the objection looks far different than the letters we have in the record here. Judge Erickson, you asked, why do we think Peru hasn't weighed in? I'll venture my answer to that, which is that they don't actually object to Judge Perry's ruling. And the reason I know that is from the arbitration filings that Peru has made in the arbitration that Renko initiated against it. And those arbitration filings, which Judge Perry cited below, and we cited them in our brief, are a searing rebuke to the defendant's conduct. They castigate the defendants for what they did with the smelter. And Peru accuses the defendants of using the arbitration to orchestrate conflicts with the Missouri litigation. You read that filing from the government of Peru, which is more recent than anything Mr. Rosenkranz has. It is five years later, after discovery in this case. And you cannot walk away from that thinking that Peru is so offended by this case that it thinks there's a grave foreign policy interest in dismissal. The other thing, I'm sorry, Judge. I hate to do this, because it's been kicking around in my brain and it's five minutes back in the argument. But if we look at the choice of law analysis, which ultimately, if we're going to get to comedy, we're going to have to do some choice of law analysis to figure out where we end up. You go through the comedy factors and assuming that the case could stay here, we're still going to have to choose laws. And the question I've got on the choice of law is that this case has been pending for 17 years. And I don't know what Peruvian statutes of limitations look like, and I don't know what their equitable tolling doctrines look like. But if this case is dismissed out of the Missouri courts, are these claims of all these plaintiffs gone? It's a very good question, Judge Erickson. I don't know the answer to that. The defendants in their reply brief have asserted that there is no problem with sending these cases to Peru because they've consented to jurisdiction there. But in terms of your statute of limitations question, I don't know the answer. I think that's something that would have to be worked out if the cases were sent to Peru. And I think it is a very relevant determination. It's one of the reasons that I think Judge Perry was so reluctant to dismiss this case after 16 years, because you're creating those exact potential sort of problems. But I think, Judge Erickson, the more fundamental point about the conflict of laws question you ask, and again, Judge Perry conducted this analysis. I just want to be clear that if the defendants complied with the PAMA, which we heard a lot about from Mr. Rosenkranz, if they complied with Peruvian law, they are immune from liability. And so Peruvian policy choices cannot be affronted in this case if compliance with those policies is a defense. So that is a ruling that she made, and that is as this court comes to you. And Judge Erickson, none of the conflict of law analysis has been appealed. So I think you take that as Judge Perry did it. I think that is an answer to essentially every conflict that Mr. Rosenkranz has tried to orchestrate. In his opening argument, the only answer was, well, then you would have a federal court deciding what Peruvian law means. But that happens all the time in federal litigation. Federal courts apply and interpret foreign law. And as our GDG case in the 11th Circuit explains, which I think is our best case on the law of this doctrine, it says that's a routine sort of circumstance that does not exercise what should be an extraordinarily rare surrender of jurisdiction. And so I think, Judge Erickson, that is the main thing in my mind when you're writing the opinion that the conflict of laws analysis, I think, resolves their main argument about why Peruvian interests are so affronted. And frankly, Judge Erickson, I think that might also explain why Peru hasn't weighed in here. But one of their letters is from 2007. So it's ancient. It's 16 years ago. A lot has changed. That's as long as this case. Go ahead. That's right. That's right. Be careful on the ancient. Proceed. Well, Judge Benton, I think that's a very relevant point because this case has been going on a long time. We are ready for trial. We have 16 plaintiffs that have gone through full discovery. There's a couple of summary judgment motions that remain pending. But we would like to move to trial. And I think Judge Perry, one of the reasons that she was so reluctant to kick the case is for that reason. And I just wanted to end by saying that international comedy abstention should be the very rare exception, not the norm. And there have been very few cases that have ever applied it. And again, in every single one, you've had at least one of the sovereigns weighing in and asking you to dismiss. Here, Mr. Rosenkranz is asking this court to conduct its own foreign policy analysis and dismiss. That is unprecedented and should not happen here. I see my time is up, so unless the court has any further questions. Seeing none, thank you for the argument. Mr. Rosenkranz. Thank you, Your Honor. Let me just, a few points really pretty much in the order in which counsel proceeded. First, on the implementing statute. It says that a litigant quote shall, no private litigant quote, shall have any cause of action or defense under the agreement. But abstention is not a defense. It does not defeat plaintiff's claim on the merits, like personal jurisdiction would, for example. Comedy abstention, like forum non, just moves the case to the appropriate forum. Even if you could call abstention a defense, just because we listed it along with 36 other items called defenses and other things, it is not, quote, a defense under this agreement. A defense under the agreement is something like preemption that can only be asserted because of the agreement. Comedy, in contrast, is a doctrine with a completely separate life, completely apart from the agreement. We're only using the agreement to inform this court's understanding of the relative interests of the parties. Speaking of the interests, Peru has emphatically said at 198 and at 223, and I quote, the exclusive jurisdiction to hear these claims should be in Peru. They are not required to hire a US lawyer to enter a US court when they've so emphatically made that statement through diplomatic channels the way sovereigns always operate. And the 2007 letter adopted in full the 2017 letter, and it calls for the district court action to be dismissed. I was saying earlier that this is an attack on Peruvian sovereignty. And it is, because before the PAMA is ever applied, plaintiffs have to prove their case of negligence under Missouri law. Failing to satisfy the PAMA does not create liability here. Plaintiff's theory is, and I'm quoting from their expert, it's all about denigrating Peru's environmental enforcement practices. It's, quote, weak and ineffective. He says Peru is not sufficiently sophisticated to regulate. Then moving to the PAMA, which ends up being a defense only if liability is established. Plaintiffs are going to argue, just to be clear, we satisfied every single step in the right order. There's no dispute about that. They're going to say we didn't satisfy the PAMA because of exotic theories that raise issues of first impressions. First impression is the district court itself acknowledged at 26 to 28. I see my time is about up. May I just take one more minute, Your Honor? No. OK. Proceed. Proceed to sum up, counsel. Yeah, thank you. So we both stay in the same time. Yes. Plaintiffs talk about abuse of discretion. There was an abuse of discretion at every step of the way with each of the legal errors that the district court made. For all of these reasons, Your Honors, we respectfully request that the district court's judgment be reversed. Thank counsel for your argument. Case number 23-1625 is submitted for decision by the court. Ms. Gruffy.